PHILIP J. KAPLAN (State Bar No. 135735)
philipkaplanlaw@gmail.com
LAW OFFICES OF PHILIP J. KAPLAN
3278 Wilshire Blvd., Suite 106
Los Angeles, California 90010
Telephone: (213) 480-8981

Attorney for Plaintiff
T. J. LATVIS

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| T.J. LATVIS, an individual, | Case No.  3:20-cv-02900 |
| Plaintiff, | **COMPLAINT FOR DAMAGES FOR DEPRIVATION OF CIVIL RIGHTS PURSUANT TO 42 U.S.C. SECT. 1983 (EXCESSIVE FORCE); BATTERY; AND NEGLIGENCE** |
| vs. | |
| CALIFORNIA HIGHWAY PATROL, a state law enforcement agency of the State of California; SCOTT LANDER, an individual; and DOES 1-5, inclusive, | |
| Defendants. | **DEMAND FOR JURY TRIAL** |

Plaintiff T.J. Latvis (hereinafter "Plaintiff") hereby alleges as follows:

## PARTIES

1.      Plaintiff alleges that Defendant California Highway Patrol (hereinafter sometimes "CHP") is a state law enforcement agency of the State of California.

2.      Plaintiff is informed and believes and thereon alleges that Defendant Scott Lander (#15549) (hereinafter sometimes "Sgt. Lander") is, and

Complaint
Case No.

all relevant times was, an "employee" of CHP in accordance with California Government Code Section 810.2 with the rank of "Sergeant", and a "person" acting under the color of law within the meaning of 42 U.S.C. Section 1983.

3.     Plaintiff is ignorant of the true names and capacities of Defendants sued herein as Does 1 through 5, inclusive, and therefore sues these Defendants by such fictitious names.  Plaintiff will amend this complaint to allege their true names and capacities when ascertained.  Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants is responsible in some manner for the occurrences alleged in this complaint, and that Plaintiff's damages as alleged were proximately and legally caused by the Defendants' conduct.  At all times material herein, each Defendant was the agent, servant and employee of each of the remaining Defendants, and acting within the purpose, scope and course of said Agency, service and employment, with the express and/or implied knowledge, permission and consent of the remaining Defendants, and each of them, and each of said Defendants ratified and approved the acts of Defendants.

## JURISDICTION/VENUE

4.     Jurisdiction of this court is founded upon 42 U.S.C. Section 1983. This court has pendent jurisdiction over the California State law claims, pursuant to 28 U.S.C. § 1367.  Venue is proper pursuant to 28 U.S.C. § 1400(a), because the defendants or their agents reside or may be found within this district and because defendants transact business, including the alleged tortious acts, within this district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5.     Plaintiff has exhausted her administrative remedies by timely filing a governmental tort claim in accordance with California Government Code Section 910 et seq.  Notice of rejection was served by mail, dated February 19, 2020, by the California Department of General Services/Government Claims Program (GCP).  This action was timely filed in accordance with California

Complaint
Case No.

Government Code Section 945.6.

**ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

6.     On Saturday, September 21, 2019, at approximately 5:15 p.m., Plaintiff received a telephone call from a good friend.  The call was urgent. Plaintiff's friend advised that she had been rear-ended (twice), causing her knee to hit the dashboard and snapping her neck. The friend was extremely upset and explained that she had come to a complete stop on the on-ramp to 101-South, near the City of San Francisco.  The friend asked if Plaintiff could please come.

7.     When the call came, Plaintiff was at her home in San Francisco. Plaintiff said that she would be there as soon as possible.  Soon after receiving the call, Plaintiff jumped in her car and made her way to the accident site.  The drive took approximately thirty-five (35) minutes.

8.     When Plaintiff arrived, two (2) CHP officers were at the location. Plaintiff pulled up behind a female officer and put her emergency flashers on. Plaintiff got out of her vehicle and walked toward the female CHP officer.  The female officer asked if Plaintiff was involved in the accident.  Plaintiff replied that she was not, but that her friend up ahead had been a victim and was hurt. The officer instructed Plaintiff to get into her vehicle.  Plaintiff responded that she had driven some distance from San Francisco and advised, among other things, that her friend had been, reportedly, hit twice, was hurt, and was very upset.  Plaintiff asked if she could be allowed to see her friend, even if for a very brief moment. Eventually, the female officer relented and told Plaintiff that it was okay to go ahead to see her friend for a short time.  Plaintiff let the officer know, "Thank you very much!"

9.     At this time, Plaintiff observed that the traffic on the on-ramp was barely at a crawl.  After getting permission to proceed to meet with her friend, Plaintiff proceeded along the right side of the female CHP officer's vehicle (an SUV).  In the front of the SUV was the motorcycle of the second CHP employee at the scene, Sgt. Scott Lander.  In front of the motorcycle was the

Complaint
Case No.

vehicle who, allegedly, rear-ended Plaintiff's friend.  At the front was Plaintiff's friend's vehicle.  As Plaintiff began to proceed forward, she noticed that the other driver involved in the incident was standing outside his vehicle, on the side of the on-ramp, talking on his cellphone.

10.    As Plaintiff walked forward, Sgt. Lander, without any type of warning or verbal command, grabbed Plaintiff, hard, with his bike gloves near Plaintiff's right underarm.  Sgt. Lander twisted Plaintiff's arm back and pulled it back beyond what could be extended.  He yelled, "Where do you think you're going!"  Shocked, Plaintiff looked at Sgt. Lander.  Lander immediately accused Plaintiff of disobeying an officer, "you disobeyed the orders of an officer!"  Plaintiff responded that she did not disobey the orders of an officer and that she would not, and that she had been granted permission by the other CHP officer at the scene. Sgt. Lander repeated the accusation that Plaintiff had disobeyed an officer and, then, ordered that Plaintiff get in her vehicle.  Plaintiff, now beginning to experience pain, returned to her vehicle and got in.

11.    Soon after this incident with Sgt. Lander, the vehicles involved in the incident, the two CHP personnel, and Plaintiff (in the rear), at the recommendation of the female CHP officer, caravanned off the on-ramp, took the first Cesar Chavez Exit on to Potrero Avenue, and pulled over to the side.  As she got out of her car, Plaintiff pulled out a quilted coat out of her trunk, to give her padding/protection/security.  She kept her distance from Sgt. Lander.  Lander queried, "Do you think I'm going to hurt you?"  Plaintiff replied that she did not know what Lander might do.  She told Lander that he had no right grabbing and yanking her arm.  Several times, Lander insisted that she had "disobeyed the orders of an officer."  Plaintiff repeatedly told the officer, "Officer, I did not disobey an officer – and I wouldn't."  Lander corrected her, "Sergeant!"

12.    Meanwhile, the female CHP officer was keeping quiet.  Plaintiff asked that the officer inform Lander that Plaintiff had been granted permission

Complaint
Case No.

-4-

to see her friend and that Plaintiff had not disobeyed orders. Lander, again, piped up that Plaintiff *had* disobeyed orders. Plaintiff, again, warned Lander, "Keep your hands off me. You had no right. I was told I could check on my friend." Plaintiff asked the female CHP if she was going to say anything, and the female CHP officer did speak up and advised Sgt. Lander that she *had* given permission to Plaintiff to see her friend. Plaintiff heard this statement, as well as Plaintiff's friend.

13.     After the above exchange, Plaintiff waited on the sidewalk, keeping her distance from Sgt. Lander, as the accident report was being written. Lander then walked behind Plaintiff's vehicle and ran Plaintiff's plate. Shortly thereafter, without any explanation, Sgt. Lander ordered Plaintiff to leave the location. Lander then stood behind Plaintiff's vehicle, watched her turn on the ignition and put on her seatbelt, continued to watch her back up and brake, give a left directional, and leave.

14.     That evening, Plaintiff was in intense pain. She did not sleep, due to the pain in her arm, shoulder, and neck.

15.     On or about October 4, 2019, Plaintiff was diagnosed with a 1.6 cm torn rotator cuff. She was administered a cortisone shot, given a sling, and prescribed a pain medication, Mobic (which Plaintiff elected not to take, as she learned it is an opioid).

16.     Despite the above treatment, Plaintiff continued to have difficulty sleeping, sitting upright with three pillows. Most every activity was now nearly impossible, from showering to getting dressed, preparing food, cleaning dishes, changing sheets, doing the laundry, reaching for a plate/anything on a kitchen shelf, opening doors, etc. Plaintiff's dominant hand is her right hand. Before this time, Plaintiff had been physically active, including a swimming regimen playing her guitar, and other activities. Since being assaulted by Sgt. Lander, however, Plaintiff has been reduced to a virtual invalid.

17.     In addition to the above physical restrictions, Plaintiff lost the

Complaint
Case No.

-5-

opportunity to spend quality time with her mother (94 years old) and her oldest sister, who came from out-of-town to visit.

18.     In a follow-up to the above October 2019 examination, Plaintiff was advised that she was a candidate for surgery.  After obtaining a second opinion, Plaintiff scheduled and went forward with a surgery in February 2020.  During the surgery, which took over two (2) hours, it was determined that, rather than a rotator cuff tear, Plaintiff had, in fact, suffered an approximate forty percent (40%) tear of her right bicep.  As a result, the surgery was a longer, more complicated, and more expensive procedure, costing (including the facility fee) over $95,000.

19.     In the aftermath of her surgery, in addition to the complaints set forth hereinabove, Plaintiff now experiences, among other problems, a right shoulder that is locked and that is noticeably higher than her good, left shoulder.  She is also experiencing a right arm that is severely atrophying.

20.     The COVID-19 virus has complicated Plaintiff's recovery.  Not only is she isolated and confined, Plaintiff's in-person PT was cancelled ("no one over 60 years of age allowed in" – Plaintiff is in her 60's).  Her doctors are, understandably, less available to answer questions/examine/treat.

21.     At this stage, there is great uncertainty about Plaintiff's future. What is certain are her continued symptoms of constant pain, lack of mobility, atrophy, a locked shoulder, and many months of physical therapy that Plaintiff can only receive by video instruction.

## FIRST CAUSE OF ACTION FOR DAMAGES FOR
## DEPRIVATION OF CIVIL RIGHTS UNDER
## 42 U.S.C. SECTION 1983

**(Against Defendant Sgt. Scott Lander for Excessive Force – Fourth Amendment of United States Constitution)**

22.     Plaintiff hereby adopts, incorporates, and reiterates all of the preceding allegations of this complaint.

Complaint
Case No.

-6-

23.     Plaintiff alleges that she possessed the right, guaranteed by the Fourth Amendment of the United States Constitution, to be free from unreasonable seizures and excessive force.  The Fourth Amendment, made applicable to the States by the Fourteenth Amendment, ensures the rights of individuals to be free from unreasonable searches and seizures.  Plaintiff further alleges that Defendant Sgt. Lander had knowledge, at all relevant times, of the above rights under the Constitution.

24.     Plaintiff alleges that the use of force, including, without limitation, Sgt. Lander's grabbing and torqueing Plaintiff's arm, was not justified under the circumstances and was excessive.  Plaintiff alleges that there was no threat or danger to public safety, including Plaintiff's own safety, justifying the extreme use of force employed by Sgt. Lander – which he used without any prior warnings and/or verbal commands.  Plaintiff alleges that Sgt. Lander's conduct was either willful or was done with deliberate indifference to Plaintiff's rights; therefore, such conduct was not objectively reasonable, as more fully set forth below.

### *No Qualified Immunity*

25.     At the time of the above use of force, the contours of the law concerning reasonable use of force in similar circumstances, including without limitation stops and/or detentions, were clearly established.

26.     Plaintiff further alleges that, at the time of Defendant Sgt. Lander's actions, which conduct was either willfully or done with deliberate indifference to Plaintiff's rights, such conduct was not objectively reasonable, and a reasonable official in those circumstances would understand that what he/she was doing violated the law.  Specifically, under the circumstances of the instant case, Plaintiff alleges that a reasonable officer would have understood that there was no justification to grab and twist Plaintiff's arm, with great force.  Again, Plaintiff alleges that Sgt. Lander gave no warnings.  He gave no verbal commands.  Instead, he physically grabbed Plaintiff underneath her right arm

Complaint
Case No.

-7-

and twisted it with force.

27.     As a direct and proximate result of Defendant Sgt. Lander's conduct, as alleged above, Plaintiff has suffered and continues to suffer physical injuries and special and general damages, including without limitation physical and emotional pain and suffering, mental anguish, and loss of enjoyment of life in an amount according to proof, but in an amount not less than Three Million Dollars ($3,000,000).

28.     Plaintiff is further informed, believes, and thereon alleges that the above-describe acts of Defendant depriving Plaintiff of her constitutionally-protected rights, privileges, and immunities were done with evil motive or intent, or with reckless or callous indifference to Plaintiff's rights. Accordingly, Plaintiff seeks an award of punitive damages against Sgt. Lander.

## SECOND CAUSE OF ACTION FOR DAMAGES FOR BATTERY

**(Against Defendants Scott Lander and California Highway Patrol)**

29.     Plaintiff hereby adopts, incorporates, and reiterates all of the preceding allegations of this complaint.

30.     Plaintiff alleges that Sgt. Lander grabbed and torqued her right arm with intent to harm or offend.

31.     Plaintiff alleges that she did not consent to the physical contact by Sgt. Lander.

32.     Plaintiff was harmed by Sgt. Lander's physical contact, as more fully set forth above, which was the proximate cause of Plaintiff's injuries and damages herein.

33.     A reasonable person in Plaintiff's position would have been offended by Sgt. Lander's nonconsensual physical contact.

34.     Defendant CHP is liable for the above actions of its employee, Sgt. Lander, pursuant to California Government Code Section 815.2(a).

35.     Plaintiff further alleges that Defendant Lander was guilty of malice

Complaint
Case No.

-8-

and oppression as defined under California Civil Code Section 3294, and Plaintiff should recover, in addition to actual damages, punitive damages to make an example of and to punish Defendant Sgt. Lander.

## THIRD CAUSE OF ACTION FOR DAMAGES FOR NEGLIGENCE

**(Against Defendants Scott Lander and California Highway Patrol)**

36.     Plaintiff hereby adopts, incorporates, and reiterates all of the preceding allegations of this complaint.

37.     Defendant Sgt. Lander was negligent by taking the actions described above.

38.     Plaintiff was harmed as a result.

39.     As a direct and proximate result of Defendant Sgt. Lander's negligence, Plaintiff suffered harm, as more fully described above.

40.     Defendant CHP is liable for the above actions of its employee, Sgt. Lander, pursuant to California Government Code Section 815.2(a).

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1.     For compensatory damages (both special and general damages) according to proof, but not less than $3 million dollars;

2.     For pain and suffering (past and future), as well as mental anguish damages;

3.     For punitive damages against Defendant Sgt. Lander (excluding Defendant California Highway Patrol);

4.     For attorney's fees pursuant to 42 U.S.C. Section 1988;

5.     For prejudgment interest;

/ / /

/ / /

Complaint
Case No.

6.      For costs of suit incurred herein; and

7.      For such other and further relief as this court may deem just
and proper.


DATED: April 28, 2020          LAW OFFICES OF PHILIP J. KAPLAN



By **/s/*Philip J. Kaplan***
            Philip J. Kaplan
            Attorney for Plaintiff
            T. J. LATVIS




**DEMAND FOR JURY TRIAL**


Plaintiff hereby demands a jury trial in this action pursuant to
Federal Rules of Civil Procedure, Rules 38 and 81.


Dated:  April 28, 2020          LAW OFFICES OF PHILIP J. KAPLAN



**/s/*Philip J. Kaplan***
PHILIP J. KAPLAN
Attorney for Plaintiff
T. J. LATVIS

Complaint
Case No.

-10-